Filed 12/31/25  P. v. Hovanessian CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B337519 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA109118) |
| v. | |
| RAFI HOVANESSIAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roberto Longoria, Judge.  Affirmed.

Robert Werth, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jonathan Kline, and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Rafi Hovanessian (defendant) guilty of attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664, 187) and aggravated mayhem (Pen. Code, § 205). He now seeks reversal, asking us to decide whether the trial court should have instructed the jury on the lesser included offense of heat of passion manslaughter.

## I. BACKGROUND

### A. *The Offense Conduct, as Established by the Evidence at Trial*

In December 2020, defendant parked in front of a liquor store in Burbank, exited his car, and approached a homeless man, Gregory Woody (Woody), who was sitting outside the store. Defendant pulled out a security badge, falsely identified himself as a police officer, and instructed Woody to turn around and place his hands on his head. Woody responded, "F [you]," and defendant punched him in the face. Woody then threw a punch at defendant and fled. Defendant pursued Woody and punched him several more times.

Sergio Montoya (Montoya), a Domino's employee, was leaving a nearby Domino's to make a delivery when he heard screaming coming from the liquor store across the street. Montoya pulled up to defendant and Woody, exited his vehicle, and saw defendant punching Woody several times. Montoya told defendant, "Hey, stop. Leave him alone. I'm gonna call the cops." Defendant replied, "Call the cops" as if he "didn't care." Montoya then saw defendant reach into his jacket and struggle to pull something out.

Woody ran into the street but his pants fell to his ankles, tripping him. Montoya saw defendant take out a knife and follow

Woody. When defendant reached Woody, he stood over him and stabbed him in the back several times. Defendant then walked back to his car and drove away.

Woody lost consciousness and awoke as he was being treated by paramedics. He suffered from a collapsed lung, a fractured skull, multiple penetrating wounds to the back that caused broken bones to the spine, and a severed spinal cord that caused permanent paralysis.

### B.  Defendant's Testimony

Defendant, a "self-employed" chiropractor, testified in his defense at trial. On the night of Woody's stabbing, defendant testified he left his house in Burbank to go to his chiropractic office in Glendale. On the way, defendant pulled over in front of the liquor store to check his cell phone for messages. Defendant's front windows were down, and he noticed Woody sitting on the sidewalk. Woody asked defendant for change and defendant replied, "get a job." Woody became very upset and began yelling profanities at defendant.

Defendant exited his vehicle and illuminated a flashlight in Woody's direction. At some point, Woody said, "If you don't give me money[,] I'm gonna hurt you, I'm gonna hurt your family" and "I know where you live. I've been in the area of your house, your neighborhood." Defendant was "worried" because he "felt that this man might know who [he was], and [Woody] was getting very aggressive at this point."

Defendant acknowledged he "might have" pulled out a security badge he happened to have in his jacket by mistaking the badge for his wallet, but defendant denied identifying himself as law enforcement. Defendant claimed Woody at that point was

repeatedly reaching into his pockets, so defendant told him to "get his hand out of his pockets" two or three times. Woody then said, "Fuck you" and punched defendant in the jaw. Defendant began struggling with Woody and Woody pulled out a knife. Woody lunged at defendant with the knife, cutting defendant's finger as he attempted to block the attack. Defendant tried to subdue Woody by holding his jacket, but Woody managed to free himself from defendant's hold. Woody then charged at defendant, defendant moved out of the way, and Woody ran into the street and fell.

Defendant saw Woody continue to reach into his pocket. Defendant was "in shock" and "in fear of losing [his] life." He initially testified that he did not remember pulling out his own knife, but he later remembered doing so—according to him, in self-defense. Defendant testified he lost a lot of blood, "blacked out," and could not recall stabbing Woody.

### C. Jury Instructions, Conviction, and Sentencing

Based on defendant's testimony, the prosecution suggested the trial court instruct the jury on voluntary manslaughter—predicated on imperfect self-defense—as a lesser included offense of attempted murder. Defense counsel agreed and the trial court gave the instruction. Neither side asked the court to instruct the jury on the lesser included offense of voluntary manslaughter on a heat of passion theory, and the trial court did not give such an instruction.

After deliberating, the trial jury found defendant guilty as charged. The trial court sentenced him to life in prison for the attempted murder plus five years pursuant to Penal Code section 12022.7, subdivision (b) (inflicting great bodily injury including

4

paralysis) and one year pursuant to Penal Code section 12022, subdivision (b)(1) (use of the knife in the commission of the offense). Sentence on the aggravated mayhem conviction was stayed pursuant to Penal Code section 654.

## II. DISCUSSION

A defendant who kills (1) in a sudden quarrel or heat of passion or (2) when motivated by an unreasonable but good faith belief in having to act in self-defense lacks the malice required for murder and therefore can be guilty of only voluntary manslaughter. (*People v. Breverman* (1988) 19 Cal.4th 142, 154, disapproved on another ground in *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.) Defendant argues a heat of passion voluntary manslaughter instruction should have been given because there was adequate evidence to permit a reasonable jury to conclude he acted under the influence of strong passion inflamed by Woody's epithets, threats, throwing "the first punch in the scuffle," and retrieval of a weapon (the knife). As we explain, the argument is meritless. Even viewed in the requisite defense-favorable light (see, e.g., *People v. Lucas* (1997) 55 Cal.App.4th 721, 739), there was no substantial evidence warranting a heat of passion voluntary manslaughter instruction.

"A trial court has a sua sponte duty to instruct the jury on a lesser included uncharged offense if there is substantial evidence that would absolve the defendant from guilt of the greater, but not the lesser, offense. [Citation.] Substantial evidence is evidence from which a jury could conclude beyond a reasonable doubt that the lesser offense was committed. [Citations.] Speculative, minimal, or insubstantial evidence is

5

insufficient to require an instruction on a lesser included offense. [Citations.]" (*People v. Simon* (2016) 1 Cal.5th 98, 132.) "[T]o warrant instructions on provocation and heat of passion, there must be substantial evidence in the trial record to support a finding that, at the time of the killing, defendant's reason was (1) actually obscured as a result of a strong passion; (2) the passion was provoked by the victim's conduct; and (3) the provocation was sufficient to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection, from this passion rather than from due deliberation or reflection." (*People v. Wright* (2015) 242 Cal.App.4th 1461, 1481.)

"A heat of passion theory of manslaughter has both an objective and a subjective component." (*People v. Moye* (2009) 47 Cal.4th 537, 549.) "Objectively, the victim's conduct must have been sufficiently provocative to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." (*People v. Enraca* (2010) 53 Cal.4th 735, 759.) Subjectively, "the accused must be shown to have killed while under the 'actual influence of a strong passion' induced by such provocation." (*Moye, supra,* at 550.) "[T]he passion aroused need not be anger or rage, but can be any ""[v]iolent, intense, high-wrought or enthusiastic emotion"" [citation]." (*Breverman, supra,* 19 Cal.4th at 163.) A heat of passion instruction, however, is not required every time "a defendant is attacked and consequently fears for his life." (*Moye, supra,* at 555.)

Defendant chiefly relies on his own trial testimony to make the case for a heat of passion voluntary manslaughter instruction. The problem, of course, is that the thrust of that testimony was his claim of having acted in self-defense, not as a result of having been overcome by any intense emotion.

6

Defendant, for instance, testified he was "worried [he] might lose [his] life. [He] was in fear [for his] life and . . . had to . . . perform[ ] self[-]defense." Though defendant testified he was afraid, he did not testify this fear obscured his capacity to reason. To the contrary, defendant acknowledged Woody was two lanes of traffic away from him in the moments leading up to the attack. In addition, when confronted with the fact that he "could have gotten into [his] car and left," defendant testified "[Woody is] still capable of attacking me if I go in my car and I can't find my keys and I'm still trying to get into my vehicle." This, of course, is testimony that he was rationally (in his view) weighing whether to use lethal force in the moments leading up to the attack, not testimony that he was overcome by some intense emotion.[1] The trial court accordingly had no duty to give a lesser included offense instruction on heat of passion manslaughter. (*Moye*, *supra*, 47 Cal.4th at 553-554 [trial court that gave instructions on imperfect self-defense voluntary manslaughter

---

[1] Contrary to how defendant now characterizes his "black out" as some overwhelming emotion that would cloud his reasoning or memory, he testified at trial that it was due to his own injuries, including an asserted significant loss of blood. Defendant also testified he was "in shock" during trial, but the context of that testimony reveals the "shock" was due to defendant's finger injury or was meant as the equivalent of great surprise, not of some intense emotional mental state. Indeed, defendant testified about his mental state explicitly and said, "[M]y state of mind at the time was I was worried I might lose my life. I was in fear of my life and I had to defend . . . . [m]yself[.] I performed self[-]defense and I lost a lot of blood during the fight and I knew I need[ed] to get medical attention as a result of my injuries."

7

did not err in declining to also instruct on heat of passion voluntary manslaughter because even though defendant testified at one point he was "not in a 'right state of mind'" when attacking the victim, the "thrust" of the defendant's testimony was self-defense, not a heat of passion killing]; see also *People v. Gutierrez* (2009) 45 Cal.4th 789, 827 [profane insult and physical tussle insufficient to warrant heat of passion voluntary manslaughter instruction].)

The two cases defendant principally rely on to argue the contrary, *People v. Millbrook* (2014) 222 Cal.App.4th 1122 and *People v. Dominguez* (2021) 66 Cal.App.5th 163, are inapposite. In *Millbrook,* the Court of Appeal concluded heat of passion instructions were necessary based on the defendant's testimony that he was "'scared,'" "'panicking,'" and "'was not trying to be a victim again'" after previously experiencing threats and violent attacks from a high school peer and having been angered by the victim's treatment of the defendant's girlfriend. (*Millbrook, supra,* at 1139-40.) In *Dominguez,* the Court of Appeal concluded there was substantial evidence of subjective provocation when one defendant testified "he 'reacted' while 'super panicked,' and 'super scared' . . . . his mind 'went blank,' he closed his eyes, and could not stop shooting until his gun was empty," while another defendant testified "he was 'scared,' 'super scared,' and 'just started firing' with his eyes closed." (*Dominguez, supra,* at 180.) There is no similar testimony here. Defendant's testimony, especially when coupled with Montoya's testimony about defendant's nonchalant attitude, indicates at most that defendant made a calculated decision to use lethal force. The jury was properly instructed on how to evaluate that testimony; it did not need a heat of passion instruction too.

8

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM (D.), J.